**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

DEANGELO HENRY YOUNG, )
)
        Plaintiff, )
)
      v. )     Case No. 4:25-cv-01065-AGF
)
OFC. J. RAINEY, et al., )
)
        Defendants. )

## MEMORANDUM AND ORDER

Self-represented Plaintiff DeAngelo Henry Young brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights by employees of the St. Louis County Justice Center. ECF No. 1. The matter is now before the Court upon Plaintiff's second motion for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. ECF No. 7. Plaintiff's first motion to proceed without prepayment was denied for failing to provide financial information. ECF No. 6. Having reviewed the second motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). As Plaintiff is now proceeding *in forma pauperis*, the Court must review his pleadings under 28 U.S.C. § 1915. Based on this review, the Court will dismiss this action for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's

account, or (2) the average monthly balance in the prisoner's account for the prior six-month period.  After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid.  *Id.*

Plaintiff is a pretrial detainee at the St. Louis County Justice Center.  ECF No. 1 at 2.  In his signed and sworn motion to proceed without prepaying fees and costs, Plaintiff states that he is not employed, has no income, and has no money in savings.  ECF No. 7.  After initiating this action in July 2025, Plaintiff filed a noncertified prison account statement that shows regular account activity between July 2023 and April 2024, two transactions in September 2024, and one transaction in April 2025.  ECF No. 4.  On August 15, 2025, Plaintiff filed a letter with the Court, informing the Clerk that his prison Case Manager had ignored his request for a certified copy of his account transactions for the previous six months.[1]  ECF No. 5.  Based on the financial information Plaintiff has submitted, the Court will assess an initial partial filing fee of $1.00.  *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If Plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his current prison account statement in support of his claim.

---

[1] Plaintiff also noted the difficulty of getting a certified account statement in his Complaint, where he states that his prison account has been negative due to property damage since approximately September 2024.  ECF No. 1 at 7.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework.  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).  However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct."  *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  *Id.* at 679.

**Plaintiff's Amended Complaint**

Plaintiff brings this 42 U.S.C. § 1983 action against five St. Louis County Justice Center employees: (1) J. Rainey (correctional officer); (2) Unknown Nurse; (3) Tonia Unknown (nurse); (4) Amanda Unknown (nurse); and (5) Shaneka Unknown ("medical provider").  ECF No. 1 at 1-5.  Plaintiff's claims are brought against Rainey, Amanda, and Shaneka in both their individual and official capacities; against Tonia in her individual capacity only; and no capacity is specified for defendant Unknown Nurse.  *Id.*  For relief, Plaintiff seeks 38 million dollars in damages and an Order from the Court changing sick-call and med-pass policies at the Justice Center.  *Id.* at 7.

Plaintiff suffers from Chronic Kidney Disease, Stage 2 and hypertension (also known as high blood pressure).  *Id.* at 3, 6.  The Complaint is based on Plaintiff's belief that Defendants failed to appropriately respond to his requests for medical assistance on certain dates in 2023 and 2025.  He alleges that Defendants' actions have caused him "suffering with headaches and stomach pains for months," which combined with the treatment of his hypertension with "ineffective" medication, has resulted in his kidney "failing."  *Id.* at 6.

The factual allegations provided in the Complaint are brief, but Plaintiff provides supplemental support in the form of prison paperwork.[2]  ECF No. 1-1.  This paperwork is mostly prison grievance filings—many of which are duplicates and unreadable.  However, the Court has done its best to decipher the allegations made therein.  The allegations against each named Defendant are as follows.

---

[2] In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

**I.      Correctional Officer J. Rainey**

Plaintiff states that on August 7, 2023, the Justice Center went on lockdown for approximately two-and-a-half hours due to a power outage. ECF Nos. 1 at 3, 1-1 at 3. Prior to the lockdown, Plaintiff had been "feeling ill for about a day or two." During the lockdown, he "started to feel worst" but the call button in his cell was not working due to the outage. When a correctional officer passed out dinner trays, Plaintiff requested to see a nurse and refused his food because he "was feeling bad." The correctional officer informed Plaintiff that he could not call a nurse because he was passing out food trays, but that he would do it after mealtime.

Approximately an hour later when the power came on, Plaintiff pushed his cell call button and informed correctional officer Rainey that he had been trying to get medical attention for two hours and that he needed to see a nurse. Plaintiff admits that he yelled at Rainey for the nurse. Plaintiff alleges that Rainey laughed, taunted, and threatened him and his family when she told him to worry about his pending criminal charge instead of a nurse, when she made a joke about his blood pressure, and when she said that she knew where Plaintiff "stayed." ECF Nos. 1 at 3, 1-1 at 6. Plaintiff asserts that Rainey's actions put him "at substantial risk of a stroke" and that he "could've died." ECF No. 1-1 at 6.

Plaintiff asked his wife to call the Justice Center to complain, and Plaintiff was seen by a nurse "[a]fter hours." At that time, the nurse measured Plaintiff's blood pressure at 167 over 115, which he describes as "near stroke level" or on the "brink" of a hypertension crisis. *Id.* at 6, 8. Plaintiff defines a "hypertension crisis" as a reading of "higher than 180/120." *Id.* at 8. After Plaintiff was seen by the nurse, a doctor was called, and Plaintiff was prescribed medication (presumably for hypertension). *Id.*

Following this exchange between Plaintiff and Rainey over the cell button intercom, Plaintiff was placed in "23 H[ou]r lockdown with tablet restrictions" for disrespecting staff member Rainey. *Id.* at 7. According to the conduct violation report, Plaintiff was yelling for a nurse through his cell speaker button and when asked by Rainey to calm down, Plaintiff continued to "remain irate" and started cursing at Rainey, calling her names, and threatening her. Rainey then informed Plaintiff that he would receive a lockdown restriction for his disrespect, while another correctional officer attempted to call the nurse. There was no answer to the call. *Id.*

Plaintiff filed many subsequent grievances concerning this same incident and/or complaining about the lack of response to his earlier grievances on the incident. *Id.* at 8-16. It appears that in early September 2023, Plaintiff received a grievance response from the Superintendent stating that he looked into the incident, that Plaintiff was seen by medical, and that there was not enough evidence to show that Rainey acting unprofessionally. *Id.* at 16.

Overall as to defendant J. Rainey, Plaintiff claims that Rainey violated his constitutional rights by: not using "reasonable precaution to protect" him from personal injury, not providing "prompt, reasonable, and reliable answers to [his] plea for help," failing to comply with Justice Center regulations, not providing for Plaintiff's "safety, health, [and] welfare during a life threatening medical emergency," failing to show "professionalism," ignoring his calls for medical emergency, threatening him and his family, and violating his privacy rights. *Id.* at 6, 9.

## II.    Nurse Amanda Unknown

According to Plaintiff, a nurse named Amanda "angrily denied" him medical attention on September 16, 2023; lied about the Justice Center's policies; and inaccurately took his blood pressure. ECF No. 1 at 3. During "med pass" (the time when medications are distributed to inmates) on the date at issue, Plaintiff asked nurse Amanda to take his blood pressure because he

had a tightness in his chest and a headache "that caused a tightness around [his] eyes."  ECF No. 1-1 at 17.  Amanda denied Plaintiff's request, telling him that he couldn't request a blood pressure check at med pass time and that he needed to submit a sick call form.  *Id.*  However, Amanda did put the blood pressure cuff on Plaintiff's arm and "blurted" out a reading of "140/80."  *Id.* at 18. Plaintiff's allegations concerning this reading are unreadable, but he seems to believe that Amanda either did the pressure reading incorrectly or made up the result.  Later that day and again four days later, Plaintiff filed a sick call form complaining of the same symptoms and requesting a blood pressure check.  *Id.* at 21-22.

Overall, Plaintiff alleges that Amanda violated his civil rights because the "treatment and response" to his request "was not appropriate" and he was treated disrespectfully.  He further argues that Amanda treated him with deliberate indifference to his serious medical needs when he was treated unfairly in light of his condition of hypertension, when he was not provided "adequate medical attention," when Amanda did not provide "prompt, reasonable, and reliable answers to [his] medical questions," and when he was left in pain due to his headache.  *Id.* at 18-20.

### III.    Nurse Tonia Unknown

Plaintiff claims that on or about October 7, 2023, a nurse named Tonia "refused" to provide his hypertension medication "in blatant disregard for [his] health."  ECF No. 1 at 3.  Plaintiff further alleges that he was "treated unfairly" and with "blatant indifference," when Tonia "denied prompt, reasonable, and reliable answers to [his] questions."  ECF No. 1-1 at 23.  Plaintiff claims that Tonia's "failure to treat" his hypertension "could [have] result[ed] in further significant injury or the unnecessary and wanton infliction of pain."[3]  *Id.* at 24.

---

[3] In addition, Plaintiff filed paperwork from an "Individual Journal" entry from his Justice Center file that states that he spoke with nurse Tonia in December 2023 about receiving meal trays that provide a low sodium diet, due to his hypertension diagnosis.  ECF No. 1-1 at 2; *see also id.* at 26-30 (more requests for a low sodium tray).  Tonia

**IV.      Medical Provider Shaneka**

Finally, Plaintiff alleges that defendant Shaneka Unknown delayed bloodwork that he needed due to his kidney disease diagnosis.  ECF No. 1 at 6.  According to Plaintiff, he was diagnosed with "CKD" or Chronic Kidney Disease, Stage 2, on November 26, 2023.  ECF No. 1-1 at 27.  On July 4, 2025, he requested bloodwork be done, stating that he had not had any blood drawn since his diagnosis.  *Id.* at 1.  The unnamed nurse who responded to his request spoke with Shaneka Unknown—a nurse practitioner—and was told to inform Plaintiff that his labs had been ordered and that "he must comply" to have his blood drawn when it is scheduled to be done.  According to the nurse's notes, Plaintiff had been refused bloodwork in the past due to "getting angry during doctor assessment."  But as of Plaintiff's July 2025 request, the nurse noted that the bloodwork had been ordered just not yet scheduled.  Shaneka also informed Plaintiff (through the nurse) that after the ordered bloodwork was completed, Plaintiff's bloodwork would be done on an annual basis going forward.  *Id.*  Because Plaintiff's Complaint was signed four (4) days after he submitted this request for bloodwork, it is unclear whether and when this bloodwork was completed.

**Discussion**

After careful review and liberal construction of the allegations of Plaintiff's pleadings, the Court finds that Plaintiff fails to state a claim as to any of the named Defendants.  Although Plaintiff has medical diagnoses that are objectively serious medical needs, nothing in the pleadings suggests that any named Defendant knew of those medical needs and was deliberately indifferent

---

informed Plaintiff that all meal trays were low sodium but that he could request a vegetarian meal tray.  Plaintiff chose to continue with the regular, low-sodium meal tray.  *Id.*  Because it appears that Plaintiff had been receiving a low-sodium tray all along and no harm is alleged, these accusations will not be analyzed as a part of Plaintiff's potential legal claims.

to them.  For the reasons explained in detail below, this case will be dismissed under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

I.    **Deliberate Indifference Legal Standard**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978).   One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment, which protects prisoners from deliberate indifference to serious medical needs.  *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012).

Plaintiff here is a pretrial detainee.  In general, the Fourteenth Amendment's Due Process Clause is used to evaluate pretrial detainee's claims of deliberate indifference, whereas the Eighth Amendment is used to evaluate claims of convicted prisoners.  *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).   However, this distinction "makes little difference as a practical matter," because the same standard is applied. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *see also Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim).

To prevail on a deliberate indifference claim, a plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of and disregarded

- 9 -

that need.  *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).  A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent."  *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted).  An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care."  *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted).  Allegations of mere negligence in giving or failing to supply medical treatment will not suffice.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference.  *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Deliberate indifference may also be demonstrated by prison officials who intentionally deny or delay access to medical care.  *Estelle*, 429 U.S. at 104-05.  When a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the *effect* of the delay in treatment."  *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)).  To support a claim based on a delay in treatment, a plaintiff must present "verifying medical evidence" showing that the delay in treatment had detrimental effects.  *Id.* at 1119-20*; see also Holden*, 663 F.3d at 342 ("[a] prisoner alleging a delay in treatment must present verifying medical evidence that . . . [the] delays adversely affected his prognosis.").

**II.    Defendant Correctional Officer Rainey**

Plaintiff complains that correctional officer J. Rainey did not respond appropriately to his request to see a nurse, made through his cell intercom on August 7, 2023.  Specifically, Plaintiff claims that Rainey violated his constitutional rights by not acting reasonably to protect him from injury and answer his plea for help during a "medical emergency," for failing to follow Justice Center guidelines, for failing to show "professionalism," for threatening him and his family, and for violating his privacy rights.  ECF No. 1-3 at 6, 9.

First, liberally construing Plaintiff's allegations of failure to protect from medical injury as a claim of deliberately indifferent medical care, this claim against correctional officer Rainey fails. Although Plaintiff alleges that he was "at substantial risk of a stroke," Plaintiff asserts no injury that actually resulted from Rainey not immediately sending a nurse to Plaintiff's cell.  Plaintiff seems to contradict himself when he calls the situation a "medical emergency" while also admitting that when his blood pressure was read later by a nurse, it was not high enough to constitute a hypertension crisis.  Also, Plaintiff seems to have exacerbated the situation when he admittedly yelled at Rainey through the cell intercom.  Most importantly, nowhere in the pleadings does Plaintiff allege that Rainey was aware that Plaintiff suffered from hypertension or high blood pressure at the time of the August 2023 incident.  It isn't clear from the facts alleged if Plaintiff had been diagnosed with hypertension before this incident.  His only complaints at the time were "feeling ill for about a day or two" and then starting to feel worse, to the point of refusing his dinner tray.  These factual allegations do not establish that Plaintiff had a serious medical need that Rainey was aware of, or that Plaintiff was suffering from something so obvious that Rainey should have easily recognized the necessity for medical attention.

Furthermore, even if the Court assumes that Plaintiff had been diagnosed with hypertension by August 7, 2023, and that Rainey was aware of this diagnosis, the facts asserted do not establish that Rainey deliberately disregarded Plaintiff's medical needs.  After asking Plaintiff to calm down and warning him that he would receive a conduct violation for his behavior, Rainey did ask his coworker to contact the nurse for Plaintiff.  Although the nurse did not answer at that time, Plaintiff did eventually see a nurse "[a]fter hours."  Plaintiff fails to assert evidence that the delay in seeing the nurse had any detrimental effect on his health.  *See Jackson*, 815 F.3d at 1119-20.  For these reasons, Plaintiff's deliberate indifference claim against Rainey fails.

Second, many of Plaintiff's other complaints against Rainey do not rise to constitutional violations.  Plaintiff's claim that Rainey responded inappropriately or unprofessionally does not establish a constitutional violation because Plaintiff has no constitutional right to "professional" treatment.  Similarly, Plaintiff has no constitutional right to have Justice Center policies, regulations, and guidelines followed.  It is well established that there is no federal constitutional liberty interest in having state officers follow state law or having prison officials follow prison regulations.  *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (*citing Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability).  Furthermore, Plaintiff cannot establish a constitutional claim based on privacy.  A prisoner generally cannot expect to enjoy the same right to privacy that a person in free society does.  *See Hudson v. Palmer*, 468 U.S. 517, 522-30 (1984).  A "prisoner's expectation of privacy always yield[s] to what must be considered the paramount interest in institutional security."  *Id.* at 528.

Finally, Plaintiff's claim regarding Rainey's threatening behavior also fails.  According to Plaintiff, Rainey's statement about knowing where he lived constituted a threat to him and his

family.  The Constitution does not guard against all intrusions on one's peace of mind.  *King v. Olmsted Cnty.*, 117 F.3d 1065, 1067 (8th Cir. 1997).  "Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim."  *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983").  To determine whether a constitutional line has been crossed by a verbal threat making it redressable under § 1983, a court looks to whether it "caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience."  *Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015) (citing *Hopson*, 961 F.2d at 1378 (quotation omitted)).  Here, Plaintiff alleges a single instance of a verbal threat, with no allegations of brutality, wanton cruelty, or coercive pressure.  Such allegations do not state a claim of constitutional dimension.

Therefore, Plaintiff fails to provide facts which establish any constitutional violation by correctional officer J. Rainey.  Defendant Rainey will be dismissed for failure to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2)(B).

### III.    Defendant Nurse Amanda Unknown

Plaintiff claims that on September 16, 2023, nurse Amanda treated him with deliberate indifference to his hypertension diagnosis when her response to his request for a blood pressure check was "not appropriate," disrespectful, and inadequate.  He also asserts that his medical questions were not reliably answered and that she left him in pain from a headache.  At the time of Plaintiff's request, Amanda was passing out medications to inmates.  She noted to Plaintiff that blood pressure checks can't be requested during med pass, but she still put the cuff on Plaintiff's

arm and took a reading.  Plaintiff asserts that the reading was inaccurate, but he provides no reasoning or support for this belief.

These allegations are not enough to state a claim of deliberately indifferent medical care. In order to meet the subjective component required for a deliberate indifference claim, Plaintiff must provide facts indicating that nurse Amanda intentionally disregarded his medical need. *Roberts*, 917 F.3d at 1042.  Because "deliberate indifference requires a highly culpable state of mind approaching actual intent," Plaintiff must demonstrate that defendants' actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Kulkay*, 847 F.3d at 643; *Jackson*, 756 F.3d at 1066.

Plaintiff has not met that legal standard here.  Nurse Amanda did take Plaintiff's blood pressure as he requested.  Acting unprofessionally does not demonstrate intentional maltreatment. As to Plaintiff's complaints regarding medical questions and pain due to a headache, there are no facts supporting what questions were inaccurately answered or evidence indicating that nurse Amanda knew that Plaintiff had a headache.  As such, Plaintiff fails to state a claim against nurse Amanda, and she will be dismissed.  28 U.S.C. § 1915(e)(2)(B).

## IV.   Defendant Nurse Tonia Unknown

Plaintiff asserts on October 7, 2023, nurse Tonia "refused" to give him his hypertension medication and did not properly answer his questions.  According to Plaintiff, these actions "could" have injured him or caused him pain.

Like nurse Amanda, these factual allegations are not enough to state a claim of deliberate indifference.  Plaintiff does not provide details on why Amanda allegedly denied him and other inmates their medications on October 7, 2023.  Regardless of the reasoning, Plaintiff is alleging that he missed receiving his hypertension medication at a single med pass session on a single day

- 14 -

in October 2023.  This is not sufficient to demonstrate an intentional maltreatment or a refusal to provide essential care by nurse Tonia.  In addition, to the extent Plaintiff's claim can be interpreted as a delay in medical care, Plaintiff does not allege any detriment to his health from not receiving his medication on this one occasion.  Furthermore, Plaintiff does not explain what medical questions were not answered by Tonia and how the lack of answers harmed him.  Accordingly, defendant nurse Tonia will also be dismissed for failure to state a claim.  28 U.S.C. § 1915(e)(2)(B).

## V.    Defendant Nurse Practitioner Shaneka Unknown

As to defendant nurse practitioner Shaneka, Plaintiff alleges that she delayed his bloodwork which he needed to monitor his Chronic Kidney Disease.  Plaintiff does not allege any injury associated with this delay in care and no injury can be construed from the pleadings.

Based on the allegations of the Complaint and the information in the attached exhibits, nurse practitioner Shaneka ordered bloodwork be done on Plaintiff before he submitted his July 4, 2025, request.  To the extent that Plaintiff is arguing that Shaneka delayed bloodwork being done between his December 2023 diagnosis of CKD and his July 2025 request, there are no facts alleged that support this claim.  Plaintiff does not state that he requested bloodwork at any earlier date than July 2025.  To the extent any request was made, nurse notes indicate that earlier attempts to draw Plaintiff's blood had been refused because Plaintiff had gotten angry during doctor assessments.  Overall, there are no facts asserted that suggest that nurse practitioner Shaneka ever denied a request from Plaintiff to have bloodwork done.  Thus, Plaintiff's claims against Shaneka Unknown will be dismissed for failure to state a claim.  28 U.S.C. § 1915(e)(2)(B).

## VI.    Defendant Unknown Nurse

Finally, Plaintiff fails to state a claim against the defendant he names in the caption as "Unknown Nurse" (ECF No. 1 at 1), because he never states any allegations against this defendant in his Complaint.  There are no facts indicating that this defendant is causally linked to, or directly responsible for, violating Plaintiff's rights.  *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights).  Plaintiff merely lists this Unknown Nurse as a defendant without alleging, with any specificity, that he or she did anything to violate his rights.  As a result, the Complaint fails to state a claim upon which relief may be granted as to defendant Unknown Nurse.  *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of *pro se* complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them).

Furthermore, the Complaint contains no information about Unknown Nurse that would permit his or her identity to be ascertained after reasonable discovery.  *See Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (suit naming "various other John Does to be named when identified" not permissible).  As a result, the Complaint fails to state a claim upon which relief may be granted as to Unknown Nurse.  28 U.S.C. § 1915(e)(2)(B).

### Conclusion

Plaintiff's second motion to proceed *in forma pauperis* will be granted and a $1.00 initial partial filing fee will be assessed.  However, upon initial review under 28 U.S.C. § 1915, the Court

- 16 -

finds that Plaintiff's Complaint fails to state a claim upon which can be granted as to all named Defendants.  As a result, this case will be dismissed under 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's second motion for leave to proceed *in forma pauperis* [ECF No. 7] is **GRANTED.**  *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $1.00 within **thirty (30) days** of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding. *See* 28 U.S.C. § 1915(b)(1).

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the Complaint as to any defendant because the Complaint fails to state a claim upon which relief can be granted.  Plaintiff's claims against defendants J. Rainey, Unknown Nurse, Nurse Tonia Unknown, Nurse Amanda Unknown, and Medical Provider Shaneka Unknown are **DISMISSED without prejudice**.  *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 5th day of June, 2026.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE